UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00 - CIV-

CIV-MORENO

MAGISTRATE JUDGE
DUBÉ

ROBERT A. CHINICK and
WILLIAM B. OBERLINK,

Plaintiffs,

v.

ANNE GOWER, TED GOWER, and
ARMOR SCREEN CORPORATION,

Defendants.
_____/

## COMPLAINT

The plaintiffs Robert A. Chinick and William B. Oberlink, through undersigned counsel, sue the defendants Anne Gower, Ted Gower, and Armor Screen Corporation and allege:

1.      This is an action for securities fraud and other claims concerning investments induced from the plaintiffs in securities of the defendant company.

## PARTIES

2.      The plaintiff, Robert A. Chinick is sui generis and is a Florida citizen who resides within the Southern District of Florida.

3.      The plaintiff, William B. Oberlink is sui generis and is a Florida citizen who resides within the Southern District of Florida.

4.      The defendant, Anne Gower is a Canadian citizen who resides in Palm Beach County, Florida, which is within the Southern District of Florida.  At all relevant



times, she was the control person of the corporation and directed the activities that are the factual judicature of the complaint.

5.      The defendant, Ted Gower is a Canadian citizen who resides in Palm Beach County, Florida, which is within the Southern District of Florida.  At all relevant times, and at the direction of the defendant Anne Gower, he acted as an agent of the corporation and directed the activities that are the factual predicate of this complaint.

6.      The defendant, Armor Screen Corporation is a corporation duly organized and existing under the laws of Florida having its principal place of business in Palm Beach County, Florida, which is within the Southern District of Florida.

### JURISDICTION AND VENUE

7.      The court has original jurisdiction of the subject matter and of the person of each defendant pursuant to 15 U.S.C. §§ 77a et seq., 78a et seq., and supplemental jurisdiction pursuant to 27 U.S.C. § 1367.  Venue is proper in the Southern District of Florida, pursuant to 28 U.S.C. § 1391(b).

8.      The plaintiffs seek to recover damages in excess of $75,000.00, exclusive of interest, costs, and reasonable attorney's fees.  The plaintiffs also seek injunctive relief.

### GENERAL ALLEGATIONS

9.      At the request of the defendants Anne and Ted Gower and Armor Screen Corporation in December 1999, the plaintiffs invested money in exchange for securities in the defendant company.

10.     Prior to soliciting the plaintiffs to invest in the defendant company, the defendant Anne Gower owned 100% of the shares of the defendant company.

2

11.   After selling shares to the plaintiffs and other investors, the defendant Anne Gower owns approximately 80% of the shares of the defendant company.

12.   The defendants sold the securities to the plaintiffs.

13.   The defendants used instrumentalities of interstate commerce to sell the securities to the plaintiffs.

14.   Armor Screen Corporation manufactures, sells, and installs one product – a flexible wind abatement system, a type of mesh screening, to protect buildings against the heavy winds and rains associated with tropical storms and hurricanes.

15.   The design of defendants' flexible wind abatement system is of a lightweight, flexible material that, when installed at an angle or a sufficient distance from the windows, deflects heavy winds, rains, and airborne debris.

16.   Essential to the success of the product is to be able to install it securely to the existing structure of a building without the need for any substantial modification around the windows (or other areas to be protected) of the structure.

17.   To induce the investments of the plaintiffs, the defendants Anne and Ted Gower acting jointly and on behalf of the defendant company, represented to the plaintiffs that a formal submittal of a product control application to the Building Code Compliance Office of Miami-Dade County had been made by the defendants, and that the product and installation procedures were in the process of final approval.

18.   The defendants also represented that the Miami-Dade County approval would well position the company for approval by other jurisdictions and facilitate insurance company approval.

3

19.     The defendants misrepresented the Miami-Dade County approval.   The approval obtained by the defendants contained a minimum distance requirement of 22 inches for the product to be installed away from windows of a structure, which requirement makes the product impractical for the windows of most structures.

20.     The defendants' misrepresentations and omissions of fact are material.

21.     In justifiable reliance on the defendants' misrepresentations, the plaintiffs purchased the securities.

22.     The misrepresentations and omissions of the defendants were substantial causes of the plaintiffs' loss of their investments.

23.     By written agreements dated December 22, 1999, the defendants employed the plaintiffs for an initial term of 60 months at a base salary of $50,000.00 each, plus incentive compensation.   A copy of the agreement for Mr. Chinick is annexed as exhibit 1.  A copy of the agreement for Mr. Oberlink is annexed as exhibit 2.

24.     In October 2000, the defendant Anne Gower conducted an improper meeting of shareholders, called the meeting hastily and without notifying all the shareholders, to reconstitute the board of directors of the defendant company.

25.     As a result of her actions and at her direction, the defendants wrongfully terminated the employment of the plaintiffs.

26.     At the time of the termination of their employment, the plaintiffs were owed substantial sums of past due wages and out of pocket expenses and were entitled to receive payments into the future for the remainder of the initial term of the employment agreements.

4

27.     The plaintiffs have retained undersigned counsel and have agreed to pay them reasonable attorneys' fees and reimbursement of expenses.

## COUNT ONE
### (Violation of 15 U.S.C. 78j(b) and Rule 10b-5)

28.     The plaintiffs reallege paragraphs 2 through 21.

29.     The defendants made material misrepresentations or omitted material facts in connection with their sale of securities to the plaintiffs.

30.     The defendants knew, or but for their severe recklessness should have known, of the materiality of their misrepresentations and omissions.

31.     The plaintiffs justifiably relied on the defendants' representations and omissions in purchasing the securities.

32.     The defendants' misrepresentations and omissions caused the loss of the plaintiffs' investments.

33.     The defendants intentionally or with severe recklessness defrauded the plaintiffs in connection with the plaintiffs' purchase of securities from the defendants, in violation of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. 240.10b-5.

34.     The defendants Anne and Ted Gower and Armor Screen Corporation are subject to liability, jointly and severally, to the plaintiffs for the losses caused by the defendants' acts and omissions.

WHEREFORE, the plaintiffs demand judgment against the defendants Anne and Ted Gower and Armor Screen Corporation for recovery of plaintiffs' investments, lost profits, prejudgment interest, and all other relief that the court deems just and proper.

## COUNT TWO
### (Violation of Fla. Stat. §§ 517.301 and 517.211)

35.     The plaintiffs reallege paragraphs 2 through 21.

36.     The plaintiffs' investments are in securities under Fla. Stat. § 517.021.

37.     The defendants made material misrepresentations and omitted material facts in connection with their sale of securities to the plaintiffs.

38.     The defendants knew or but for their severe recklessness should have known of the falsity of their representations and the materiality of their omissions.

39.     The plaintiffs justifiably relied on the defendants' representations and omissions in purchasing the securities.

40.     The defendants Anne and Ted Gower and Armor Screen Corporation are subject to liability, jointly and severally, to the plaintiffs for their losses caused by the defendants' acts and omissions.

WHEREFORE, the plaintiffs demand judgment against the defendants, Anne and Ted Gower and Armor Screen Corporation for recovery of the plaintiffs' investments, plus lost profits, prejudgment interest, and attorneys' fees and costs pursuant to Fla. Stat. § 517.211, and all other relief that the court deems just and proper.

## COUNT THREE
### (Injunction)

41.     The plaintiffs reallege paragraphs 2 through 21 and 23.

42.     The only asset of any value of the defendant company is the invention of the flexible wind abatement system and the potential patent rights of the system that the defendant company may own arising from the United States Patent Application No. 08/861,209, filed May 21, 1997, and the related Continuation in Part application that is

currently pending before the United States Patent and Trademark Office. Those rights are wholly owned by the defendant company.

43. Alienation or liquidation of the potential patent rights would effectively result in the dissipation of all the company's assets and the irreparable loss of the patent rights.

44. An injunction is necessary to enjoin the defendants from alienating or liquidating the company's potential patent rights.

45. The plaintiffs have no adequate remedy at law if the potential patent rights are alienated or liquidated.

46. An injunction enjoining the defendants is a proper method to maintain the status quo and to prevent irreparable loss to the plaintiffs.

WHEREFORE, the plaintiffs request that the court enter an order enjoining all the defendants, their agents, assigns, officers, and representatives from alienating or liquidating, in any fashion, the defendant company's rights arising from the United States Patent Application No. 08/861,209, filed May 21, 1997 and the related Continuation in Part Application, until further notice from the court or until final judgment on the merits is entered allowing such alienation or liquidation.

## COUNT FOUR
### (Breach of Employment Agreements)

47. The plaintiffs reallege paragraphs 2 through 7 and 22 through 26.

48. The defendant Armor Screen Corporation wrongfully terminated the plaintiffs' employment, thereby breaching its agreements with the plaintiffs.

49. As a result of the breach, the plaintiffs have been damaged.

50.     Section 18(r) of each employment agreement provides for the recovery of attorneys' fees and costs to the prevailing party in any litigation relating to or arising out of the employment agreements.

WHEREFORE, the plaintiffs demand judgment against the defendant Armor Screen Corporation for damages, including prejudgment interest, attorneys' fees and costs pursuant to Section 18(r) of the agreements, past and future wages and out of pocket expenses. and all other relief that the court deems just and proper.

## COUNT FIVE
(Tortious Interference)

51.     The plaintiffs reallege paragraphs 2 through 7 and 22 through 26.

52.     The employment agreements of the plaintiffs evidence a business relationship between the plaintiffs and the defendant Armor Screen Corporation.

53.     The defendants Anne and Ted Gower had knowledge of and intentionally interfered with the business relationship between the defendant company and the plaintiffs.

54.     The interference of the defendants Anne and Ted Gower is unjustified.

55.     The acts of the defendants Anne and Ted Gower caused damage to the plaintiffs.

WHEREFORE, the plaintiffs demand judgment against the defendants Anne and Ted Gower for damages, including prejudgment interest, past and future wages and out of pocket expenses, and all other relief that the court deems just and proper.

8

## DEMAND FOR JURY

The plaintiffs demand trial by jury on all issues triable to a jury.

Dated: November 15, 2000

LEVY, KNEEN, MARIANI, CURTIN,
  KORNFELD, & DEL RUSSO, P.A.
    Counsel for Plaintiffs
1400 Centrepark Boulevard, Suite 1000
West Palm Beach, Florida 33401
Telephone - (561) 478-4700
Facsimile - (561) 478-5811


By: _____
     John F. Mariani
     Florida Bar No. 263524
     Nancy E. Guffey-Landers
     Florida Bar No. 990078


Thomas K. Equels, Esq.
Florida Bar No. 304735
Holtzman, Krinzman, Equels & Furia, P.A.
  Counsel for Plaintiffs
2601 South Bayshore Drive, Suite 600
Miami, Florida 33133
Telephone - (305) 859-7700
Facsimile - (305) 859-9996



RECYCLED PAPER

## EMPLOYMENT AGREEMENT

**THIS AGREEMENT** between **ARMOR SCREEN CORPORATION**, a Florida corporation (the "Employer" or "Company"), and **ROBERT CHINICK** ("Executive").

### W I T N E S S E T H:

**WHEREAS**, Employer wishes to employ Executive, and Executive desires to work for Employer on the terms and conditions hereinafter provided.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, Employer and Executive agree as follows:

1.     **Employment.** Executive represents and warrants to Employer that he is free to accept employment with Employer as contemplated hereby, and that he has no prior or other obligations or commitments of any kind to anyone that would in any way hinder or interfere with his acceptance, or the full performance, of his obligations hereunder or the exercise of his best efforts in his employment hereunder.   Employer hereby employs Executive, and Executive agrees to work for Employer during the term of this Agreement in the capacity of Chief Financial Officer of Employer.  Executive's duties hereunder will be those normally incident to the position of Chief Financial Officer and such other duties as may be reasonably assigned to him from time to time by the Company's Board of Directors and/or the Chief Executive Officer.  During the period of his employment hereunder and except for illness and reasonable vacation periods, Executive shall devote all his business time, attention, skill and efforts to the faithful performance of his duties hereunder.

2.     **Term of Employment.**

(a)     *Term.*  Executive's term of employment shall (i) begin as of the effective date of this Agreement and (ii) end sixty (60) months from such date ("Initial Term"), provided that such term shall automatically be extended as provided in subsection (c) hereof and, further, that such term is subject to earlier termination upon the first to occur of the following:

(1)     The death of Executive.

(2)     At such time as Executive shall have failed by reason of mental or physical disability or illness (collectively, "Disability" as hereinafter defined) to perform his services as described in Section 1 for a period of six (6) consecutive months.  "Disability" for purposes of this Agreement shall mean the inability of Executive to perform his duties under this Agreement as determined by an independent physician selected with the approval of Employer and Executive; provided, however, if Employer maintains a policy insuring against the disability of Executive, then "Disability" shall have the same meaning as in such policy.

(b)     *Termination for Cause.*  This Agreement also may be terminated by (i) either party in the event of a material breach of this Agreement by the other party if such breach is not

cured within thirty (30) days of receipt by the party in breach of written notice thereof sent by the other party, and (ii) Employer for "cause". Notwithstanding anything herein to the contrary, Executive shall have no right to cure any of the items (i) through, and inclusive of (iv) of the next sentence. For purposes of this Agreement, "cause" shall mean: (i) improper use or taking of any property of Employer, including, but not limited to customer lists or Confidential Information (hereinafter defined), (ii) commission of an act constituting common law fraud or commission of any criminal act, (iii) malfeasance of Executive, (iv) repeated intoxication by alcohol, drug or substance abuse during the performance of Executive's duties, or (v) material failure to follow the reasonable and lawful directives of the Company's Board of Directors.

(c)     *Termination by Executive in Certain Events.*  Executive shall have the right to terminate his employment under this Agreement by resignation upon not less than sixty (60) days prior written notice given within a reasonable period of time after any of the following events occur or during their continuation (all of which events among other shall also be deemed a termination of employment by Employer without cause):

(i)     failure to elect or re-elect or to appoint or re-appoint Executive as Chief Financial Officer of Employer; or

(ii)     material change by Employer in Executive's functions, duties, or position with Employer to materially diminish the responsibility, importance or scope from the position and attributes thereof described in Section 1 and any such material change shall be deemed a continuing breach of this Agreement; or

(iii)     liquidation, dissolution, consolidation or merger of Employer, or acquisition of a controlling interest in Employer or transfer of all or substantially all of its assets.

**3.     Compensation.**  Employer shall pay Executive as compensation, in consideration for all his services hereunder, the following amounts:

(a)     *Base Compensation.*  A salary of Fifty Thousand Dollars ($50,000) (such salary to be payable not less frequently than monthly in accordance with Employer's business practices) ("Base Compensation");

(b)     *Incentive Compensation.*

An amount equivalent to a percentage, as determined annually by the Board of Directors, of income in excess of projections targeted by the Board of Directors.

(c)     *Maximum Compensation.*  Notwithstanding anything to the contrary contained herein, in no event shall Employer be obligated to pay Executive in any one fiscal year more than Five Hundred Thousand Dollars ($500,000) in Base and Incentive Compensation.

*I*

4. **Vacation.** Executive shall be entitled to paid vacation during each year of the term of this Agreement for a period not to exceed four (4) weeks in each calendar year.

5. **Place of Performance.** In connection with his employment by the Company, Executive shall be based at the Company's principal executive offices in Palm Beach County, Florida, or such other place as the Board of Directors shall determine, except for required travel on the Company's business.

6. **Facilities Available to Executive.** Employer shall furnish Executive with an office, secretarial help and such specialized equipment, supplies, facilities and technical services as may be reasonably required for the performance of his duties as is customary in Employer's business.

7. **Participation in Benefit Plans.** The payments provided above are in addition to any benefits to which Executive may be, or may become, entitled under any employee benefit plans, including without limitation, any group hospitalization, health, sick leave, life or other insurance plans of Employer.

8. **Compensation Payable Upon Death.** In the event of Executive's death, this Agreement shall terminate and Employer shall pay to the personal representative of Executive's estate, within sixty (60) days after the appointment of such personal representative, Executive's unpaid Base Compensation, which was earned at the time of his death.

9. **Reimbursement of Expenses.** Employer will reimburse Executive for any reasonable entertainment, travel, or other reasonable and ordinary and necessary expenses incurred by Executive in rendering the services hereunder on behalf of Employer, upon presentation by him, in writing, from time to time, of an itemized account of such expenditures, in accordance with Employer's standard reporting practices.

10. **Payments Due Upon Termination of Employment.** In the event Executive's employment is terminated by Employer without cause, Employer shall continue to make payments of Base Compensation only for the remainder of the Term. If such employment is terminated on account of Executive's death (subject to **Section 8** hereof) or disability, by Employer for "cause" (as defined in **Section 2(b)** hereof), or following a material breach of this Agreement by Executive that was not cured as provided in **Section 2(b)** hereof, then, in any of such events Employer shall have no obligation to make payments for any period subsequent to such termination.

11. **Post-Termination Obligations.** Executive shall comply with the following provisions during the term of this Agreement and for one (1) full year after the expiration or termination hereof:

      (i)     Executive shall, upon reasonable notice, furnish such information and proper assistance to Employer as may reasonably be required by Employer in connection with any litigation in which it or any of its subsidiaries or affiliates is, or may become, a party provided that Employer pay or immediately reimburse Executive for all reasonable

monetary expenditures made by him in rendering the assistance to Employer that is set forth in this **Section 11**; and

(ii)    Executive shall not, to the detriment of Employer, knowingly disclose or reveal to any unauthorized person any confidential information relating to Employer, or affiliates, or to any of the businesses operated by them, and Executive confirms that such information constitutes the exclusive property of Employer.

**12.    Affirmative Covenants of Executive.**  Executive agrees that during the terms of his employment, he shall not:

(a)    (i)    Knowingly act or conduct himself in a manner that would be detrimental to Employer or its affiliates.

(ii)    Discuss with any other employee the formation or operation of any business intended to compete with Employer or any of its subsidiaries or the possible future employment of such other employee by and such business, if Executive has or expects to acquire a proprietary interest in such business or is or expects to be made an officer or director of such business.

(iii)    Inform any existing or potential customer of Employer that Executive intends to resign, or make any statement or do any act intended to cause any existing or potential customer of Employer to learn of Executive's intention to resign, without having first informed a corporate officer of Employer in writing of such intention and of the names of each representative of an existing or potential client whom employee intends to inform or cause to be informed of such intention.

(iv)    Discuss with any existing or potential customer of Employer the present or future availability of services of a business if Executive has or expects to acquire a proprietary interest in such business or is or expects to be an officer or director of such business, where such services or products are competitive with services that Employer provides.

(b)    If Executive, while employed by the Company or during a period of one (1) year after termination of such employment, makes, either solely or jointly with others, any discovery, improvement, or invention which would pertain or relate in any way to the business, products, publications, or processes of the Company, it subsidiaries, or affiliates at the time of termination of his employment, such discovery, improvement, or invention (whether or not of patentable nature) shall be the exclusive property of the Company.  Executive shall execute and deliver to the Company, without further compensation, any and all documents which the Company deems necessary or appropriate to prepare or prosecute applications for patents upon such discovery, improvement, or invention, to assign and transfer to the Company his entire right, title, and interest in and to such discovery, improvement, or invention, and patents therefor, and otherwise more fully and perfectly to evidence the Company's ownership thereof.

*l*

- 4 -

PMB_72290.1/JIGOE

**13.    Non-Competition Clause and Right to Request Statement from Company.**
From and after the date of termination of employment with the Company, and for a period thereafter equal to (a) one (1) year if terminated with cause, or (b) the greater of one (1) year or the remainder of the Term if terminated without cause. Executive shall not, directly or indirectly, either individually or as an officer, director, employee, partner, agent, consultant, principal, shareholder (other than the ownership up to 5% of the stock in a publicly traded company) or otherwise, (i) own, manage, operate, control or otherwise engage in a business or enterprise in competition with the Company's business (a "Competing Business"), or receive any compensation in any capacity from any Competing Business, (ii) attempt to solicit or solicit the customers or facilities serviced by the Company to terminate, curtail or restrict their relationship with the Company, (iii) otherwise divert or attempt to divert from the Company any business or business opportunity whatsoever, and (iv) attempt to solicit or solicit any person employed or contracted by the Company, or any of their affiliates, to leave their employment or not fulfill their contractual responsibility, whether or not the employment or contracting is full-time or temporary, pursuant to a written or oral agreement, or for a determined period or at will.

Each restrictive covenant hereinabove set forth in **Sections 12** and **13** hereof is separate and distinct of every other restrictive covenant set forth in this **Section 13**, and in the event of the invalidity of any such covenant, the remaining obligation shall be deemed independent and divisible.

Executive recognizes and acknowledges that Employer has made a substantial investment in the business in which Executive has been and will be involved, and that the restrictions contained in this **Section 13** are necessary for Employer's reasonable protection. Executive shall have the right to request from Employer a statement ("Employer's Statement") that a proposed business or position ("Proposed Business") is not competing within the terms of this Agreement. Executive shall furnish Employer with information about Proposed Business which is reasonably necessary to make an informed decision in order for it to give or withhold Employer's Statement. If Executive receives such a Statement, or if within sixty (60) days of making a written request to Employer for such a statement, he does not receive a negative reply to his request, Executive may assume that the Proposed Business or position is not competing, and he shall be protected in going into the Proposed Business or accepting the position. However, if thereafter Employer discovers that the information given to it by Executive with respect to the Proposed Business contains a material misstatement of fact Employer may regard Executive's activities as competing within the meaning of this Agreement, it may notify Executive in writing of this fact, and unless Executive ceases the objectionable activities within sixty (60) days after such notification, Executive shall no longer be protected under the foregoing provision.

**14.    Representations of Employer.** Employer hereby represents and warrants that (i) it is duly organized, validly existing and in good standing under the laws of the State of Florida, and is qualified to do business and in good standing in every jurisdiction in which such qualification is necessary, (ii) the execution, delivery and performance by it of this Agreement has been duly authorized by all requisite corporation action, (iii) this Agreement is the valid, legal and binding obligation of the Company, and (iv) this Agreement doe not violate any provision of law, any order of any court or other governmental authority, the Articles of

PMB_72290.1/JIGOE

Incorporation or By-Laws of the company, or any provision of any agreement, indenture or other instrument to which it is a party or by which its properties are bound.

15. **Financial Statements.** For accounting purposes under this Agreement, the financial statements of the Company shall be prepared on an accrual basis in accordance with generally accepted accounting principles, consistently applied, and there shall be an annual audit of its accounts made by a firm of independent certified public accountants of material recognition. Executive shall be furnished with a copy of such financial statements which shall include, among other things, a balance sheet, income statement, statements of cash flow and a statement of changes in stockholder's equity together with appropriate notes thereto, as soon as reasonably practicable after the close of the Company's fiscal year, but in no event later than one hundred twenty (120) days from such year end. Executive shall have the right at all reasonably times during usual business hours to examine and make copies of or extracts from the financial records of the Company. Such right shall be exercised through any agent of Executive designated by him.

16. **Employer's Right to Institute Proceedings.** Executive and Employer recognize that the services to be rendered under this Agreement by Executive are special, unique, and of extraordinary character, and that in the event of the breach by Executive of the terms and conditions of this Agreement to be performed by him or in the event that, except as provided for above, Executive performs services for any person, firm, or corporation engaged in a competing line of business with Employer, Employer shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction, either in law or in equity, or obtain damages for any breach of this Agreement, or to enjoin Executive from performing services for any such other person, firm, or corporation. Such injunction shall be in addition to all other remedies to which the Company shall be entitled.

17. **Confidentiality.**

(a) *Confidential Information.* Executive acknowledges that as a result of Executive's employment with the Company, Executive has and will necessarily become informed of, and have access to, certain valuable and confidential information of the Company, including, without limitation, trade secrets, technical information, plans, customer lists, data, records, fee schedules, computer programs, manuals, processes, methods, intangible rights, contracts, agreements, licenses and personnel information (collectively, the "Confidential Information"), and that the Confidential Information, even though it may be contributed, developed or acquired in whole or in part by Executive, is the Company's exclusive property to be held by Executive in trust and solely for the Company's benefit. Accordingly, except as required by law, Executive shall not, at any time, either during or subsequent to the term of this Agreement, use, reveal, report, publish, copy, transcribe, transfer or otherwise disclose to any person, corporation or other entity, any of the Confidential Information without the prior written consent of the Company, except to responsible officers and employees of the Company and other responsible persons who are in a contractual or fiduciary relationship with the Company and except for information which legally and legitimately is or becomes of general public knowledge from authorized sources other than Executive.

PMB_72290.1/JIGOE

(b)  *Return of Confidential Information.*  Upon the termination of this Agreement, Executive shall promptly deliver to the Company all Company property and possessions including all drawings, manuals, letters, notes, notebooks, reports, copies, deliverable Confidential Information and all other materials relating to the Company's business which are in Executive's possession or control.

18.  **General Provisions.**

(a)  *Entire Agreement.*  This Agreement contains the entire understanding between the parties hereto and supersedes any prior employment Agreement between Employer, or any predecessor of Employer, and Executive.

(b)  *Consolidation, Merger, or Sale of Assets.*  Nothing in this Agreement shall preclude Employer from consolidating or merging into or with, or transferring all or substantially all of its assets to, another corporation that assumes this Agreement and all obligations and undertakings of Employer hereunder.  Upon such a consolidation, merger, or transfer of assets and assumption, the term the "Employer" as used herein, shall mean such other corporation, and this Agreement shall continue in full force and effect.

(c)  *Nonassignability.*  Neither this Agreement nor any right or interest hereunder shall be assignable by Executive, his heirs, beneficiaries, or legal representatives without Employer's prior written consent provided, however, that nothing in this Section 18 shall preclude: (i) Executive from designating a beneficiary to receive benefits payable hereunder upon his death; or (ii) the personal representatives, administrators, or other legal representatives of Executive or his estate from assigning any rights hereunder to the person or persons entitled to such benefits.

(d)  *No Attachment.*  Except as required by law, no right to receive payments under this Agreement shall be subject to anticipation, alienation, sale, assignment, encumbrance, charge, pledge, or hypothecation or to execution, attachment, levy, or similar process or assignment by operation of law, and any attempt, voluntary or involuntary, to effect any such action shall be null, void, and of no effect.

(e)  *Notice.*  Any notice, consent, approval or other communication given pursuant to the provisions of this Agreement shall be in writing and shall be (i) mailed by certified mail or registered mail, return receipt requested, postage prepaid, or (ii) delivered by a nationally recognized overnight courier, U.S. Post Office Express Mail, or similar overnight courier which delivers only upon signed receipt of the addressee, and addressed as follows:

If to Employer:        Armor Screen Corporation
                       8011 Monetary Drive, Suite A-2
                       Riviera Beach, Florida 33404
                       Attn:  President

If to Executive:       Robert Chinick
                       18363 Island Oak Avenue
                       Jupiter, FL  33478

- 7 -

PMB_72290.1/JIGOE

The time of the giving of any notice shall be the time of receipt thereof by the addressee or any agent of the addressee, except that in the event the addressee or such agent of the addressee shall refuse to receive any notice given by registered mail or certified mail as above provided or there shall be no person available at the time of the delivery thereof to receive such notice, the time of the giving of such notice shall be the time of such refusal or the time of such delivery, as the case may be.  Any party hereto may, by giving five (5) days written notice to the other party hereto, designate any other address in substitution of the foregoing address to which notice shall be given.

(f)     *Modification.*  This Agreement may not be modified or amended except by an instrument in writing signed by the party against whom enforcement is sought.

(g)     *Waiver.*  No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel against the enforcement of any provision of this Agreement, except by written instrument of the party charged with such waiver or estoppel.  No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

(h)   • *Governing Law.*  The validity, construction, and enforcement of, and the remedies under, this Agreement shall be governed in accordance with the laws of the State of Florida.

(i)     *Headings.*  The section headings used herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

(j)     *Binding Agreement.*  This Agreement shall be binding upon, and inure to the benefit of, Executive and Employer, and their respective permitted successors, heirs, and assigns.

(k)     *Survival.*  The provisions of **Sections 8, 10, 11, 12, 13, 16** and **17** shall survive the termination of this Agreement.

(l)     *Additional Acts.*   Executive and the Company each agrees to execute, acknowledge and deliver all further instruments, agreements or documents and do all further acts that are necessary or expedient to carry out this Agreement's intended purposes.

(m)     *Construction.*   This Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement to be drafted, including any presumption of superior knowledge or responsibility based upon a party's business or profession or any professional training, experience, education or degrees of any member, agent, officer or employee of any party.  If any words in this Agreement have been stricken out or otherwise eliminated (whether or not any other words or phrases have been added) and the stricken words initialed by the party against whom the words are construed, this

PMB_72290.1//JIGOE

Agreement shall be construed as if the words so stricken out or otherwise eliminated were never included in this Agreement and no implication or inference shall be drawn from the fact that those words were stricken out or otherwise eliminated.

(n)     *Counterparts.*  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

(o)     *Severability.*  The invalidity or unenforceability of any one or more of the words, phrases, sentences, clauses, or sections contained in this Agreement shall not affect the validity or enforceability of the remaining provisions of this Agreement or any part of any provision, all of which are inserted conditionally on their being valid in law, and in the event that any one or more of the words, phrases, sentences, clauses or sections contained in this Agreement shall be declared invalid or unenforceable, this Agreement shall be construed as if such invalid or unenforceable word or words, phrase or phrases, sentence or sentences, clause or clauses, or section or sections had not been inserted or shall be enforced as nearly as possible according to their original terms and intent to eliminate any invalidity or unenforceability. If any invalidity or unenforceability is caused by the length of any period of time or the size of any area set forth in any part of this Agreement, the period of time or area, or both, shall be considered to be reduced to a period or area which would cure the invalidity or unenforceability.

(p)     *No Third-Party Beneficiaries.*  All obligations of the Company under this Agreement are imposed solely and exclusively for the benefit of Executive, and no other person will have standing to enforce, be entitled to or be deemed to be the beneficiary of any of these obligations.

(q)     *Remedies.*  Unless otherwise specified herein, no remedy conferred upon either party to this Agreement is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity. Every power or remedy given by this Agreement to any party or to which such party may otherwise be entitled, may be exercised concurrently or independently, from time to time, and as often as may be deemed expedient inconsistent remedies may be pursued. Because a breach of the provisions of this Agreement will not adequately be compensated by money damages, the Company shall be entitled, in addition to any other right or remedy available, to an injunction restraining such breach or a threatened breach and to specific performance of any such provision of this Agreement and in either case no bond or other security shall be required in connection therewith, and the parties hereby consent to the issuance of such injunction and to the ordering of specific performance.

(r)     *Litigation.*  In the event of any litigation between the parties to this Agreement relating to or arising out of this Agreement, the prevailing party shall be entitled to an award of reasonable attorneys" fees and costs, including such fees and costs at pretrial, trial and all appellate levels.

*l*

(s)     *Jurisdiction; Venue; Inconvenient Forum; Jury Trial.*  ANY SUIT, ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT, OR ANY JUDGMENT ENTERED BY ANY COURT IN RESPECT TO THIS AGREEMENT SHALL BE BROUGHT IN THE COURTS OF THE STATE OF FLORIDA OR IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA IN PALM BEACH COUNTY, AND THE PARTIES ACCEPT THE EXCLUSIVE PERSONAL JURISDICTION OF THOSE COURTS FOR THE PURPOSE OF ANY SUIT, ACTION OR PROCEEDING.  IN ADDITION, THE PARTIES KNOWINGLY, INTENTIONALLY AND IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH THEY MAY NOW OR LATER HAVE TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR ANY JUDGMENT ENTERED BY ANY COURT BROUGHT IN THE STATE OF FLORIDA, AND FURTHER, KNOWINGLY, INTENTIONALLY AND IRREVOCABLY WAIVE ANY CLAIM THAT ANY SUIT, ACTION OR PROCEEDING BROUGHT IN THE STATE OF FLORIDA HAS BEEN BROUGHT IN AN INCONVENIENT FORUM, EACH PARTY WAIVES ALL RIGHTS TO ANY TRIAL BY JURY IN ALL LITIGATION RELATING TO OR ARISING OUT OF THIS AGREEMENT.

(t)     *Effective Date.*  This Agreement shall become effective as of the date set forth below.

(u)     *Advice of Counsel.*  Employee acknowledges that he has been advised to retain his own counsel to review this Agreement and to advise Employee with respect to the terms and conditions contained herein.

**IN WITNESS WHEREOF,** Employer and Executive have executed this Agreement on this 22nd day of December, 1999.

**EMPLOYER:**

**ARMOR SCREEN CORPORATION,**
a Florida corporation

By:_____
Ted Gower,
Executive Vice President

**EXECUTIVE:**

_____
Robert Chinick

- 10 -



RECYCLED PAPER



# EMPLOYMENT AGREEMENT

**THIS AGREEMENT** between **ARMOR SCREEN CORPORATION**, a Florida corporation (the "Employer" or "Company"), and **WILLIAM OBERLINK** ("Executive").

## W I T N E S S E T H:

**WHEREAS,** Employer wishes to employ Executive, and Executive desires to work for Employer on the terms and conditions hereinafter provided.

**NOW, THEREFORE,** in consideration of the mutual covenants contained herein, Employer and Executive agree as follows:

1.      **Employment.**  Executive represents and warrants to Employer that he is free to accept employment with Employer as contemplated hereby, and that he has no prior or other obligations or commitments of any kind to anyone that would in any way hinder or interfere with his acceptance, or the full performance, of his obligations hereunder or the exercise of his best efforts in his employment hereunder.  Employer hereby employs Executive, and Executive agrees to work for Employer during the term of this Agreement in the capacity of Chairman of the Board of Directors and Chief Executive Officer of Employer.  Executive's duties hereunder will be those normally incident to the positions of Chairman of the Board the Board of Directors and Chief Executive Officer and such other duties as may be reasonably assigned to him from time to time by the Company's Board of Directors.  During the period of his employment hereunder and except for illness and reasonable vacation periods, Executive shall devote all his business time, attention, skill and efforts to the faithful performance of his duties hereunder.

2.      **Term of Employment.**

(a)      *Term.*  Executive's term of employment shall (i) begin as of the effective date of this Agreement and (ii) end sixty (60) months from such date ("Initial Term"), provided that such term shall automatically be extended as provided in subsection (c) hereof and, further, that such term is subject to earlier termination upon the first to occur of the following:

(1)      The death of Executive.

(2)      At such time as Executive shall have failed by reason of mental or physical disability or illness (collectively, "Disability" as hereinafter defined) to perform his services as described in Section 1 for a period of six (6) consecutive months.  "Disability" for purposes of this Agreement shall mean the inability of Executive to perform his duties under this Agreement as determined by an independent physician selected with the approval of Employer and Executive; provided, however, if Employer maintains a policy insuring against the disability of Executive, then "Disability" shall have the same meaning as in such policy.

(b)      *Termination for Cause.*  This Agreement also may be terminated by (i) either party in the event of a material breach of this Agreement by the other party if such breach is not

cured within thirty (30) days of receipt by the party in breach of written notice thereof sent by the other party, and (ii) Employer for "cause". Notwithstanding anything herein to the contrary, Executive shall have no right to cure any of the items (i) through, and inclusive of (iv) of the next sentence. For purposes of this Agreement, "cause" shall mean: (i) improper use or taking of any property of Employer, including, but not limited to customer lists or Confidential Information (hereinafter defined), (ii) commission of an act constituting common law fraud or commission of any criminal act, (iii) malfeasance of Executive, (iv) repeated intoxication by alcohol, drug or substance abuse during the performance of Executive's duties, or (v) material failure to follow the reasonable and lawful directives of the Company's Board of Directors.

(c)     *Termination by Executive in Certain Events.*  Executive shall have the right to terminate his employment under this Agreement by resignation upon not less than sixty (60) days prior written notice given within a reasonable period of time after any of the following events occur or during their continuation (all of which events among other shall also be deemed a termination of employment by Employer without cause):

(i)     failure to elect or re-elect or to appoint or re-appoint Executive as Chairman of the Board the Board of Directors and Chief Executive Officer of Employer; or

(ii)     material change by Employer in Executive's functions, duties, or position with Employer to materially diminish the responsibility, importance or scope from the position and attributes thereof described in Section 1 and any such material change shall be deemed a continuing breach of this Agreement; or

(iii)     liquidation, dissolution, consolidation or merger of Employer, or acquisition of a controlling interest in Employer or transfer of all or substantially all of its assets.

3.     **Compensation.**  Employer shall pay Executive as compensation, in consideration for all his services hereunder, the following amounts:

(a)     *Base Compensation.*  A salary of Fifty Thousand Dollars ($50,000) (such salary to be payable not less frequently than monthly in accordance with Employer's business practices) ("Base Compensation");

(b)     *Incentive Compensation.*

An amount equivalent to a percentage, as determined annually by the Board of Directors, of income in excess of projections targeted by the Board of Directors.

(c)     *Maximum Compensation.*  Notwithstanding anything to the contrary contained herein, in no event shall Employer be obligated to pay Executive in any one fiscal year more than Five Hundred Thousand Dollars ($500,000) in Base and Incentive Compensation.

*l*

4.     **Vacation.**  Executive shall be entitled to paid vacation during each year of the term of this Agreement for a period not to exceed four (4) weeks in each calendar year.

5.     **Place of Performance.**  In connection with his employment by the Company, Executive shall be based at the Company's principal executive offices in Palm Beach County, Florida, or such other place as the Board of Directors shall determine, except for required travel on the Company's business.

6.     **Facilities Available to Executive.**  Employer shall furnish Executive with an office, secretarial help and such specialized equipment, supplies, facilities and technical services as may be reasonably required for the performance of his duties as is customary in Employer's business.

7.     **Participation in Benefit Plans.**  The payments provided above are in addition to any benefits to which Executive may be, or may become, entitled under any employee benefit plans, including without limitation, any group hospitalization, health, sick leave, life or other insurance plans of Employer.

8.     **Compensation Payable Upon Death.**  In the event of Executive's death, this Agreement shall terminate and Employer shall pay to the personal representative of Executive's estate, within sixty (60) days after the appointment of such personal representative, Executive's unpaid Base Compensation, which was earned at the time of his death.

9.     **Reimbursement of Expenses.**  Employer will reimburse Executive for any reasonable entertainment, travel, or other reasonable and ordinary and necessary expenses incurred by Executive in rendering the services hereunder on behalf of Employer, upon presentation by him, in writing, from time to time, of an itemized account of such expenditures, in accordance with Employer's standard reporting practices.

10.     **Payments Due Upon Termination of Employment.**  In the event Executive's employment is terminated by Employer without cause, Employer shall continue to make payments of Base Compensation only for the remainder of the Term.  If such employment is terminated on account of Executive's death (subject to **Section 8** hereof) or disability, by Employer for "cause" (as defined in **Section 2(b)** hereof), or following a material breach of this Agreement by Executive that was not cured as provided in **Section 2(b)** hereof, then, in any of such events Employer shall have no obligation to make payments for any period subsequent to such termination.

11.     **Post-Termination Obligations.**  Executive shall comply with the following provisions during the term of this Agreement and for one (1) full year after the expiration or termination hereof:

(i)     Executive shall, upon reasonable notice, furnish such information and proper assistance to Employer as may reasonably be required by Employer in connection with any litigation in which it or any of its subsidiaries or affiliates is, or may become, a party provided that Employer pay or immediately reimburse Executive for all reasonable

monetary expenditures made by him in rendering the assistance to Employer that is set forth in this **Section 11**; and

(ii)    Executive shall not, to the detriment of Employer, knowingly disclose or reveal to any unauthorized person any confidential information relating to Employer, or affiliates, or to any of the businesses operated by them, and Executive confirms that such information constitutes the exclusive property of Employer.

**12.    Affirmative Covenants of Executive.**  Executive agrees that during the terms of his employment, he shall not:

(a)    (i)    Knowingly act or conduct himself in a manner that would be detrimental to Employer or its affiliates.

(ii)    Discuss with any other employee the formation or operation of any business intended to compete with Employer or any of its subsidiaries or the possible future employment of such other employee by and such business, if Executive has or expects to acquire a proprietary interest in such business or is or expects to be made an officer or director of such business.

(iii)    Inform any existing or potential customer of Employer that Executive intends to resign, or make any statement or do any act intended to cause any existing or potential customer of Employer to learn of Executive's intention to resign, without having first informed a corporate officer of Employer in writing of such intention and of the names of each representative of an existing or potential client whom employee intends to inform or cause to be informed of such intention.

(iv)    Discuss with any existing or potential customer of Employer the present or future availability of services of a business if Executive has or expects to acquire a proprietary interest in such business or is or expects to be an officer or director of such business, where such services or products are competitive with services that Employer provides.

(b)    If Executive, while employed by the Company or during a period of one (1) year after termination of such employment, makes, either solely or jointly with others, any discovery, improvement, or invention which would pertain or relate in any way to the business, products, publications, or processes of the Company, it subsidiaries, or affiliates at the time of termination of his employment, such discovery, improvement, or invention (whether or not of patentable nature) shall be the exclusive property of the Company.  Executive shall execute and deliver to the Company, without further compensation, any and all documents which the Company deems necessary or appropriate to prepare or prosecute applications for patents upon such discovery, improvement, or invention, to assign and transfer to the Company his entire right, title, and interest in and to such discovery, improvement, or invention, and patents therefor, and otherwise more fully and perfectly to evidence the Company's ownership thereof.

13. **Non-Competition Clause and Right to Request Statement from Company.** From and after the date of termination of employment with the Company, and for a period thereafter equal to (a) one (1) year if terminated with cause, or (b) the greater of one (1) year or the remainder of the Term if terminated without cause. Executive shall not, directly or indirectly, either individually or as an officer, director, employee, partner, agent, consultant, principal, shareholder (other than the ownership up to 5% of the stock in a publicly traded company) or otherwise, (i) own, manage, operate, control or otherwise engage in a business or enterprise in competition with the Company's business (a "Competing Business"), or receive any compensation in any capacity from any Competing Business, (ii) attempt to solicit or solicit the customers or facilities serviced by the Company to terminate, curtail or restrict their relationship with the Company, (iii) otherwise divert or attempt to divert from the Company any business or business opportunity whatsoever, and (iv) attempt to solicit or solicit any person employed or contracted by the Company, or any of their affiliates, to leave their employment or not fulfill their contractual responsibility, whether or not the employment or contracting is full-time or temporary, pursuant to a written or oral agreement, or for a determined period or at will.

Each restrictive covenant hereinabove set forth in **Sections 12** and **13** hereof is separate and distinct of every other restrictive covenant set forth in this **Section 13**, and in the event of the invalidity of any such covenant, the remaining obligation shall be deemed independent and divisible.

Executive recognizes and acknowledges that Employer has made a substantial investment in the business in which Executive has been and will be involved, and that the restrictions contained in this **Section 13** are necessary for Employer's reasonable protection. Executive shall have the right to request from Employer a statement ("Employer's Statement") that a proposed business or position ("Proposed Business") is not competing within the terms of this Agreement. Executive shall furnish Employer with information about Proposed Business which is reasonably necessary to make an informed decision in order for it to give or withhold Employer's Statement. If Executive receives such a Statement, or if within sixty (60) days of making a written request to Employer for such a statement, he does not receive a negative reply to his request, Executive may assume that the Proposed Business or position is not competing, and he shall be protected in going into the Proposed Business or accepting the position. However, if thereafter Employer discovers that the information given to it by Executive with respect to the Proposed Business contains a material misstatement of fact Employer may regard Executive's activities as competing within the meaning of this Agreement, it may notify Executive in writing of this fact, and unless Executive ceases the objectionable activities within sixty (60) days after such notification, Executive shall no longer be protected under the foregoing provision.

14. **Representations of Employer.** Employer hereby represents and warrants that (i) it is duly organized, validly existing and in good standing under the laws of the State of Florida, and is qualified to do business and in good standing in every jurisdiction in which such qualification is necessary, (ii) the execution, delivery and performance by it of this Agreement has been duly authorized by all requisite corporation action, (iii) this Agreement is the valid, legal and binding obligation of the Company, and (iv) this Agreement doe not violate any provision of law, any order of any court or other governmental authority, the Articles of

Incorporation or By-Laws of the company, or any provision of any agreement, indenture or other instrument to which it is a party or by which its properties are bound.

15. **Financial Statements.**  For accounting purposes under this Agreement, the financial statements of the Company shall be prepared on an accrual basis in accordance with generally accepted accounting principles, consistently applied, and there shall be an annual audit of its accounts made by a firm of independent certified public accountants of material recognition.  Executive shall be furnished with a copy of such financial statements which shall include, among other things, a balance sheet, income statement, statements of cash flow and a statement of changes in stockholder's equity together with appropriate notes thereto, as soon as reasonably practicable after the close of the Company's fiscal year, but in no event later than one hundred twenty (120) days from such year end.  Executive shall have the right at all reasonably times during usual business hours to examine and make copies of or extracts from the financial records of the Company.  Such right shall be exercised through any agent of Executive designated by him.

16. **Employer's Right to Institute Proceedings.**  Executive and Employer recognize that the services to be rendered under this Agreement by Executive are special, unique, and of extraordinary character, and that in the event of the breach by Executive of the terms and conditions of this Agreement to be performed by him or in the event that, except as provided for above, Executive performs services for any person, firm, or corporation engaged in a competing line of business with Employer, Employer shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction, either in law or in equity, or obtain damages for any breach of this Agreement, or to enjoin Executive from performing services for any such other person, firm, or corporation.  Such injunction shall be in addition to all other remedies to which the Company shall be entitled.

17. **Confidentiality.**

(a)  *Confidential Information.*  Executive acknowledges that as a result of Executive's employment with the Company, Executive has and will necessarily become informed of, and have access to, certain valuable and confidential information of the Company, including, without limitation, trade secrets, technical information, plans, customer lists, data, records, fee schedules, computer programs, manuals, processes, methods, intangible rights, contracts, agreements, licenses and personnel information (collectively, the "Confidential Information"), and that the Confidential Information, even though it may be contributed, developed or acquired in whole or in part by Executive, is the Company's exclusive property to be held by Executive in trust and solely for the Company's benefit.  Accordingly, except as required by law, Executive shall not, at any time, either during or subsequent to the term of this Agreement, use, reveal, report, publish, copy, transcribe, transfer or otherwise disclose to any person, corporation or other entity, any of the Confidential Information without the prior written consent of the Company, except to responsible officers and employees of the Company and other responsible persons who are in a contractual or fiduciary relationship with the Company and except for information which legally and legitimately is or becomes of general public knowledge from authorized sources other than Executive.

(b)    *Return of Confidential Information.*  Upon the termination of this Agreement, Executive shall promptly deliver to the Company all Company property and possessions including all drawings, manuals, letters, notes, notebooks, reports, copies, deliverable Confidential Information and all other materials relating to the Company's business which are in Executive's possession or control.

18.    **General Provisions.**

(a)    *Entire Agreement.*  This Agreement contains the entire understanding between the parties hereto and supersedes any prior employment Agreement between Employer, or any predecessor of Employer, and Executive.

(b)    *Consolidation, Merger, or Sale of Assets.*  Nothing in this Agreement shall preclude Employer from consolidating or merging into or with, or transferring all or substantially all of its assets to, another corporation that assumes this Agreement and all obligations and undertakings of Employer hereunder.  Upon such a consolidation, merger, or transfer of assets and assumption, the term the "Employer" as used herein, shall mean such other corporation, and this Agreement shall continue in full force and effect.

(c)    *Nonassignability.*  Neither this Agreement nor any right or interest hereunder shall be assignable by Executive, his heirs, beneficiaries, or legal representatives without Employer's prior written consent provided, however, that nothing in this Section 18 shall preclude: (i) Executive from designating a beneficiary to receive benefits payable hereunder upon his death; or (ii) the personal representatives, administrators, or other legal representatives of Executive or his estate from assigning any rights hereunder to the person or persons entitled to such benefits.

(d)    *No Attachment.*  Except as required by law, no right to receive payments under this Agreement shall be subject to anticipation, alienation, sale, assignment, encumbrance, charge, pledge, or hypothecation or to execution, attachment, levy, or similar process or assignment by operation of law, and any attempt, voluntary or involuntary, to effect any such action shall be null, void, and of no effect.

(e)    *Notice.*  Any notice, consent, approval or other communication given pursuant to the provisions of this Agreement shall be in writing and shall be (i) mailed by certified mail or registered mail, return receipt requested, postage prepaid, or (ii) delivered by a nationally recognized overnight courier, U.S. Post Office Express Mail, or similar overnight courier which delivers only upon signed receipt of the addressee, and addressed as follows:

|                    |                                    |
|--------------------|------------------------------------|
| If to Employer:    | Armor Screen Corporation           |
|                    | 8011 Monetary Drive, Suite A-2     |
|                    | Riviera Beach, Florida 33404       |
|                    | Attn: President                    |
|                    |                                    |
| If to Executive:   | William Oberlink                   |
|                    | 13061 Sabal Chase                  |
|                    | Palm Beach Gardens, FL 33418       |

The time of the giving of any notice shall be the time of receipt thereof by the addressee or any agent of the addressee, except that in the event the addressee or such agent of the addressee shall refuse to receive any notice given by registered mail or certified mail as above provided or there shall be no person available at the time of the delivery thereof to receive such notice, the time of the giving of such notice shall be the time of such refusal or the time of such delivery, as the case may be. Any party hereto may, by giving five (5) days written notice to the other party hereto, designate any other address in substitution of the foregoing address to which notice shall be given.

(f) *Modification.* This Agreement may not be modified or amended except by an instrument in writing signed by the party against whom enforcement is sought.

(g) *Waiver.* No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel against the enforcement of any provision of this Agreement, except by written instrument of the party charged with such waiver or estoppel. No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

(h) • *Governing Law.* The validity, construction, and enforcement of, and the remedies under, this Agreement shall be governed in accordance with the laws of the State of Florida.

(i) *Headings.* The section headings used herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

(j) *Binding Agreement.* This Agreement shall be binding upon, and inure to the benefit of, Executive and Employer, and their respective permitted successors, heirs, and assigns.

(k) *Survival.* The provisions of **Sections 8, 10, 11, 12, 13, 16** and **17** shall survive the termination of this Agreement.

(l) *Additional Acts.* Executive and the Company each agrees to execute, acknowledge and deliver all further instruments, agreements or documents and do all further acts that are necessary or expedient to carry out this Agreement's intended purposes.

(m) *Construction.* This Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement to be drafted, including any presumption of superior knowledge or responsibility based upon a party's business or profession or any professional training, experience, education or degrees of any member, agent, officer or employee of any party. If any words in this Agreement have been stricken out or otherwise eliminated (whether or not any other words or phrases have been added) and the stricken words initialed by the party against whom the words are construed, this

Agreement shall be construed as if the words so stricken out or otherwise eliminated were never included in this Agreement and no implication or inference shall be drawn from the fact that those words were stricken out or otherwise eliminated.

(n)    *Counterparts.*  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

(o)    *Severability.*  The invalidity or unenforceability of any one or more of the words, phrases, sentences, clauses, or sections contained in this Agreement shall not affect the validity or enforceability of the remaining provisions of this Agreement or any part of any provision, all of which are inserted conditionally on their being valid in law, and in the event that any one or more of the words, phrases, sentences, clauses or sections contained in this Agreement shall be declared invalid or unenforceable, this Agreement shall be construed as if such invalid or unenforceable word or words, phrase or phrases, sentence or sentences, clause or clauses, or section or sections had not been inserted or shall be enforced as nearly as possible according to their original terms and intent to eliminate any invalidity or unenforceability.  If any invalidity or unenforceability is caused by the length of any period of time or the size of any area set forth in any part of this Agreement, the period of time or area, or both, shall be considered to be reduced to a period or area which would cure the invalidity or unenforceability.

(p)    *No Third-Party Beneficiaries.*  All obligations of the Company under this Agreement are imposed solely and exclusively for the benefit of Executive, and no other person will have standing to enforce, be entitled to or be deemed to be the beneficiary of any of these obligations.

(q)    *Remedies.*  Unless otherwise specified herein, no remedy conferred upon either party to this Agreement is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity.  Every power or remedy given by this Agreement to any party or to which such party may otherwise be entitled, may be exercised concurrently or independently, from time to time, and as often as may be deemed expedient inconsistent remedies may be pursued.  Because a breach of the provisions of this Agreement will not adequately be compensated by money damages, the Company shall be entitled, in addition to any other right or remedy available, to an injunction restraining such breach or a threatened breach and shall to specific performance of any such provision of this Agreement and in either case no bond or other security shall be required in connection therewith, and the parties hereby consent to the issuance of such injunction and to the ordering of specific performance.

(r)    *Litigation.*  In the event of any litigation between the parties to this Agreement relating to or arising out of this Agreement, the prevailing party shall be entitled to an award of reasonable attorneys" fees and costs, including such fees and costs at pretrial, trial and all appellate levels.

PMB_72082.3/POMALLEY

(s)      *Jurisdiction; Venue; Inconvenient Forum; Jury Trial.*   ANY SUIT, ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT, OR ANY JUDGMENT ENTERED BY ANY COURT IN RESPECT TO THIS AGREEMENT SHALL BE BROUGHT IN THE COURTS OF THE STATE OF FLORIDA OR IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA IN PALM BEACH COUNTY, AND THE PARTIES ACCEPT THE EXCLUSIVE PERSONAL JURISDICTION OF THOSE COURTS FOR THE PURPOSE OF ANY SUIT, ACTION OR PROCEEDING.   IN ADDITION, THE PARTIES KNOWINGLY, INTENTIONALLY AND IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH THEY MAY NOW OR LATER HAVE TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR ANY JUDGMENT ENTERED BY ANY COURT BROUGHT IN THE STATE OF FLORIDA, AND FURTHER, KNOWINGLY, INTENTIONALLY AND IRREVOCABLY WAIVE ANY CLAIM THAT ANY SUIT, ACTION OR PROCEEDING BROUGHT IN THE STATE OF FLORIDA HAS BEEN BROUGHT IN AN INCONVENIENT FORUM, EACH PARTY WAIVES ALL RIGHTS TO ANY TRIAL BY JURY IN ALL LITIGATION RELATING TO OR ARISING OUT OF THIS AGREEMENT.

(t)      *Effective Date.*   This Agreement shall become effective as of the date set forth below.

(u)      *Advice of Counsel.*   Employee acknowledges that he has been advised to retain his own counsel to review this Agreement and to advise Employee with respect to the terms and conditions contained herein.

**IN WITNESS WHEREOF,** Employer and Executive have executed this Agreement on this 22nd day of December, 1999.

**EMPLOYER:**

**ARMOR SCREEN CORPORATION,**
a Florida corporation

By:_____
Ted Gower,
Executive Vice President

**EXECUTIVE:**

_William B. Oberlink_

- 10 -

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**CIV-MORENO**

## I. (a) PLAINTIFFS

Robert A. Chinick and
William B. Oberlink

## DEFENDANTS

Anne Gower, Ted Gower, and
Armor Screen Corporation

**MAGISTRATE JUDGE**
**DUBÉ**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Palm Beach
(IN U.S. PLAINTIFF CASES ONLY)
NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John F. Mariani, Esq. (561) 478-4700
Levy, Kneen, Mariani, et al.
1400 Centrepark blvd., #1000, WPB, FL 33401

ATTORNEYS (IF KNOWN)

Robert M. Weinberger, Esq. (561) 844-3600
Cohen, Norris, Scherer, et al.
712 U.S. Hwy #1, #400, NPB, FL 33408-4146

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:   DADE,   MONROE,   BROWARD,   PALM BEACH,   MARTIN,   ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE   HIGHLANDS

## II. BASIS OF JURISDICTION   (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | B☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | B☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☒ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | | B☐ 535 Death Penalty | A☐ 791 Empl Ret Inc Security Act | A☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | B☐ 540 Mandamus & Other | | A☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | B☐ 550 Civil Rights | | | A OR B |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION

(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §78j(b) and SEC Rule 106-5,
LENGTH OF TRIAL via ___ days estimated (for both sides to try entire case)   17 C.F.R. 240.106-5.   The defendants intentionally defrauded the plaintiffs in connection with
the plaintiff's purchase of securities from the defendants.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $ in excess
of $75,000, injunctive
relief.

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ YES   ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY   N/A

JUDGE _____   DOCKET NUMBER _____

DATE   11/15/00

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 7/35.26   AMOUNT 8/50.00   APPLYING IFP _____   JUDGE Moreno   MAG. JUDGE Dubé